UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MANUEL GONZALEZ, individually and on behalf of all others similarly situated,

                      Plaintiff,

    -against-

DOM'S LAWNMAKER, INC. and DOMINICK D'ALONZO, as an individual,

                      Defendants.
------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
17-CV-3519 (JMA) (SIL)

**FILED**
**CLERK**

2:13 pm, Dec 07, 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**Joan M. Azrack, United States District Judge:**

Named plaintiff Manuel Gonzalez commenced this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and New York Labor Law ("NYLL") §§ 195, 650, *et seq.* against defendants Dom's Lawnmaker, Inc. ("Dom's") and Dominick D'Alonzo ("D'Alonzo," and together, "Defendants").  Gonzales, along with five additional opt-in plaintiffs who joined this action, allege that Defendants failed to compensate Plaintiffs for all the hours they worked during their employment at Dom's.  Plaintiffs also bring related claims alleging that the wage notices and wage statements they received violated the NYLL.

For the following reasons, Defendants' motion for summary judgment is DENIED in part and GRANTED in part.

**I.    BACKGROUND**

Dom's Lawnmaker, Inc. ("Dom's") is in the business of tree and landscaping work.  (Defs.' 56.1 ¶ 1.)  D'Alonzo is President and Owner of Dom's.

1

Plaintiffs Manuel Gonzalez ("Gonzales"), Eder Benjamin Paredes ("Paredes"), Francisco Parra Delacruz ("Delacruz"), Matthew Amman ("Amman"), Norvin D. Barrientos Mata ("Mata"), and Oliver Martinez ("Martinez") are six former employees of Dom's. Plaintiffs performed tree cutting and pruning and related work for Dom's. For much of the work at issue, Plaintiff would report, at 6 a.m., to a parking lot at the Belmont Racetrack where Dom's trucks were parked. Dom's workers would leave the Belmont parking lot in Dom's vehicles and would head to job sites. Plaintiffs generally drove Dom's trucks although, at certain times, a Plaintiff would merely ride as a passenger in the truck. After completing work at job sites, Dom's employees would either drive (or ride on) Dom's vehicles back to the Belmont parking lot.

Dom's paid Plaintiffs for all of the time listed on their time sheets. When the timesheets indicated that Plaintiff worked more than forty hours per week and were entitled to overtime compensation at 1.5 times their regular rate, Dom's paid Plaintiffs this overtime premium based on the hours listed on the time sheets.

Plaintiffs, however, contend that their time sheets are not accurate. Dom's did not use a time clock or timecard system. Instead, Plaintiffs would sign time sheets in the beginning of the day. Plaintiffs, however, normally did not enter either their start or end times on the time sheets, which were filled out by their supervisors or by other employees acting at a supervisor's direction. Plaintiffs—who were not given an opportunity to review their time sheets to ensure their accuracy—maintain that they worked additional time that was not accounted for on their time sheets. In affidavits

and deposition testimony, Plaintiffs provide estimates of the additional time they worked for which they allege they were not compensated.

## II. LEGAL STANDARD

### A. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).

"An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "When ruling on a summary judgment motion, [the court] must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.*, 352 F.3d at 780.

### B. Overtime and Gap Time Claims Under the FLSA and NYLL

#### 1. Overview

Section 207 of the FLSA mandates that employers must compensate their respective employees for hours in excess of 40 per week at a "rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

The same holds true under New York law. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.2; *see also Chun Jie Yin v. Kim*, No. 07–CV–1236, 2008 WL 906736, at *4 (E.D.N.Y. Apr. 1, 2008). An employee who sues for overtime compensation bears the burden of proving that an employer did not properly compensate him. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946).

In addition to raising claims for unpaid overtime, an employee may also seek to pursue gap-time claims for unpaid time. "A gap-time claim is one in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013)." In *Lundy*, the Second Circuit held that "[a]n employee who has not worked overtime has no claim under FLSA for hours worked below the 40–hour overtime threshold, unless the average hourly wage falls below the federal minimum wage." *Id.* However, gap time claims may be cognizable under the NYLL.[1]

---

[1] As Defendants point out, under *Lundy*, Plaintiffs cannot pursue gap-time claims under the FLSA. Accordingly, the Court grants Defendants' motion for summary judgment on this issue and dismisses Plaintiff's gap-time claims under the FLSA. The parties' briefs, however, do not address the compensability of gap time under the NYLL. Accordingly, the Court does not reach the question of whether such gap time is compensable under the NYLL. Notably, Defendants' brief relies on *Lundy*, which left open the question of whether gap time is compensable under the NYLL and noted that "New York law may recognize Plaintiffs' NYLL gap-time claims." *Lundy*, 711 F.3d at 118. Defendants' brief also cites to *Gregory v. Stewart's Shops Corp.*, No. 14-CV-00033, 2015 WL 893058, at *4 (N.D.N.Y. Mar. 2, 2015), which concluded that gap-time claims are cognizable under the NYLL.

4

### 2. Plaintiffs' Burden of Proof When the Employer's Records are Not Accurate

The FLSA requires employers to maintain accurate records of the hours and wages of their employees. *See* 29 U.S.C. § 211(c) (requiring every employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him"); *see also* 29 C.F.R. § 516.2(a)(7) (requiring that employers maintain records of "[h]ours worked each workday and total hours worked each workweek" by employees). New York State law includes similar record keeping requirements for employers. *See* N.Y. Lab. Law § 661 (requiring employers to establish and maintain payroll records "showing for each week worked the hours worked, the rate or rates of pay and basis thereof"); N.Y. Comp. Codes R. & Regs. tit. 12, § 142–2.6(a)(4) (requiring employers to establish, maintain and preserve, for not less than six years, weekly payroll records which show for each employee "the number of hours worked daily and weekly, including the time of arrival and departure for each employee working a split shift or spread of hours exceeding 10").

If an employer's records are inaccurate or inadequate, an employee need only present "sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361–62 (2d Cir. 2011); *see also Anderson*, 328 U.S. at 687 ("Where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, . . . [t]he solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent

5

of uncompensated work," as such a result would be contrary to the "remedial nature" of the FLSA); *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir.1997) (concluding that when a defendant fails to maintain the required employment records, the employee may "submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred") (internal quotation marks omitted). "As courts have found, a plaintiff can meet this burden 'by relying on recollection alone.'" *Santillan v. Henao*, 822 F.Supp.2d 284, 294 (E.D.N.Y. 2011) (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 335 (S.D.N.Y. 2005)) (collecting cases). "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88; *see also Pest v. Bridal Works of New York, Inc.*, 268 F. Supp. 3d 413, 422 (E.D.N.Y. 2017) ("[I]t is the responsibility of the employer, not the employee, to maintain employment records under Section 11(c) of the FLSA"); *Ramirez v. Rifkin*, 568 F.Supp.2d 262, 273 (E.D.N.Y. 2008) (stating that after plaintiff meets his initial burden, "[t]he burden then shifts to the employer to show that the inference is not reasonable."). A similar standard to *Anderson* is applied in deciding overtime claims under New York law. *See Park v. Seoul Broad. Sys. Co.*, No. 05–CV–8956, 2008 WL 619034, *8 n. 13 (S.D.N.Y. Mar. 6, 2008); *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 307 (E.D.N.Y. 2009).

### 3. Analysis of Plaintiffs' Claims for Unpaid Overtime and Gap Time

Plaintiffs contend that Defendants failed to pay them for all time worked. Specifically, Plaintiffs maintain: (1) that they should have been compensated for some or all of the time they were at the Belmont lot between 6:00 a.m. and 6:30 a.m. at the beginning of their workday; and (2) Defendants shaved time from the end of their shifts and, thus, failed to pay them for all hours worked. Plaintiffs Martinez and Ammann also contend that they worked through their unpaid lunch breaks and, thus, should have been paid for that time as well.

Defendants have moved for summary judgment on all these claims, and maintain that Plaintiffs cannot meet their burden to show that they were not paid for all their time. As explained below, Defendants' motion for summary judgment as to all Plaintiffs is denied, with the only exceptions being: (1) the issue of riding time/travel time for non-drivers at the end of the workday; and (2) the Court's determination that Plaintiff Ammann is exempt from the FLSA's overtime requirements pursuant to the Motor Carrier Exemption.

There is a factual question about the accuracy of Defendants' records and Plaintiffs have offered "sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 361–62.

First, there are factual disputes about Plaintiffs' alleged off-the-clock work in the beginning of the day prior to 6:30 a.m. Specifically, there are factual disputes concerning: (i) whether Plaintiffs were required to report to work at 6 a.m.; (ii) the

7

tasks Plaintiffs performed between 6:00 a.m. and 6:30; and (iii) the meetings Plaintiffs attended before 6:30 a.m. These factual disputes preclude summary judgment concerning Plaintiffs' alleged off-the-clock work prior to 6:30 a.m. (*See* Ammann Dep. 36–39; De La Crux Dep. 31, 34; Martinez Dep. 14, 20-22; Mata Dep. 17–20; Reyes Dep. 15–16, see also e.g. Gonzales Aff. ¶¶ 10–13; Delacruz Aff. ¶¶ 10–13; Ammann Aff. 12–14.)

Second, there is also evidence that Defendants shaved time at the end of Plaintiffs' shifts. (*See* Martinez Dep. 17 (testimony that, on certain occasions, defendant D'Alonzo instructed Martinez to not include 15-20 minutes of driving time on the drivers' timesheets); *see also* Amman Dep. 57 ("Dom had told me multiple times, that he could take half-an-hour from each guy, and at the end of the week he would get two free guys."). The Plaintiffs' affidavits and the deposition testimony cited by both Plaintiffs and Defendants raise factual questions for a jury to determine about the additional hours Plaintiffs claim to have worked.

Third, the testimony of Martinez and Ammann that they worked during their lunch breaks also precludes summary judgment concerning whether some of this unpaid time was compensable.

Defendants insist that GPS and other tracking data from the company's trucks (including the times the trucks were started and turned off) definitively establishes that Plaintiff were correctly paid. This GPS and tracking data, however, does not warrant summary judgment. First, there is evidence that certain work was performed before the trucks were even started and that Plaintiffs were told by

8

management that they needed to arrive at 6 a.m.  Second, Defendants have not even argued that this GPS and tracking data disposes of the claims of Martinez and Ammann that they worked during their unpaid lunch breaks.  Third, and most importantly, Defendants have not provided the GPS and tracking data for all of Plaintiffs' workdays and workweeks. While Defendants broadly claim that the GPS records confirm that all Plaintiff were properly paid, (Defs.' 56.1 ¶ 14), Defendants' 56.1 statement cites GPS data for only two specific days, (*see* Defs.' 56.1 ¶¶ 34–43). Additionally, Defendant have not provided the Court with all the underlying GPS and tracking data, and the limited data they have provided is buried in an almost 5,000-page exhibit that also includes various other documents.  Defendants' evidence is insufficient to warrant a grant of summary judgment on Plaintiff's claims.[2]

Defendants are only entitled to summary judgment on one discrete issue, namely, that "riding time" for non-drivers at the end of the day is not compensable.

Defendants maintain that employees who did not work as drivers are not entitled to be compensated for the time they spent, at the end of the day, "riding" back in company vehicles from the job site to the Belmont lot.  Plaintiffs have waived any arguments about the compensability of this "riding time" by non-drivers.  Plaintiffs' opposition papers do not address this issue and Plaintiffs have cited no authority indicating that this riding time is compensable.  Additionally, even absent waiver, the Court finds persuasive the authority cited by Defendants, which establishes that

---

[2] In their reply brief, Defendants belatedly offered to provide "supplemented records" to the Court. Defendants can seek to introduce this additional evidence at trial—preferably in a summary and well-organized format that compares it to the times listed on Plaintiffs' timesheets for each workday.

9

this riding time is not compensable. (*See* Defs. Mem at 13–15.) Accordingly, Defendants are granted summary judgment on the discrete issue of whether this riding time involving non-drivers at the end of the day is compensable.

While the Court concludes that this "riding time" is not compensable, this conclusion, does not warrant complete dismissal of any of the plaintiffs from this case. For example, while Gonzales—who stopped driving Defendants' trucks after losing his license—cannot recover for his "riding time" at the end of the day, Gonzales also worked as a driver. Additionally, the affidavit of Gonzales and the affidavits and deposition testimony of other Plaintiffs discuss tasks employees performed and meetings that employees attended between 6 a.m. and 6:30 a.m.

### 4. Applicability of the Motor Carrier Exemption to Ammann

Defendants contend that Plaintiff Matthew Ammann is exempt from overtime under the Motor Carrier Exemption because he performed some mechanic work for Dom's throughout his employment. As explained below, the Court finds that Ammann is exempt under the Motor Carrier Exemption.

#### *i.  Facts*

Plaintiff Ammann performed various tasks for Dom's, including tree cutting and driving. Ammann also spent some his time doing mechanic work. At his deposition, Amman admitted that, in addition to his other duties, he also did "some" work at Dom's garage maintaining equipment and trucks. (Amman Dep. 22.) Amman admitted he did oil changes, replaced parts, and got parts from the parts shop. (*Id.*) When asked "[w]hat type of parts [he would] replace," Amman answered:

10

> Any normal wear and tear items on a car or truck. If brakes needed to be done and the mechanic needed help, I would help with him brakes; if wheel bearings needed to be done and he needed help, I would help him with that.

(Id. at 22.)

Amman's deposition did not discuss the amount of time he spent on these tasks or the regularity with which he performed these tasks. In an affidavit submitted in opposition to summary judgment, Ammann states: "That while I did occasionally perform mechanic work on the vehicles, the work was minor and infrequent, taking place less than half the weeks I worked during my employment." (Ammann Aff. ¶ 15.) Ammann's declaration does not provide any further explanation concerning this work.

Defendant D'Alonzo also provided an affidavit discussing Ammann's mechanic work. According to D'Alonzo:

(1) "Ammann's job duties included replacing parts, oil changes, changing brakes and wheel bearings and other safety affecting duties on Dom's fleet of trucks including trucks weighing more than 10,001 pounds";

(2) "[t]hese activities needed to be performed and [were] performed by Plaintiff Ammann or he could reasonably expect to perform such mechanic's duties frequently and at least within every two to three months throughout his employment as such jobs are mandatory for the proper maintenance and safety of these vehicles"; and

(3) "[t]his mechanic work was performed by Plaintiff Ammann throughout his employment at Dom's."

(Dec. 19., 2019 Decl. of D'Alonzo.)

While Ammann and D'Alonzo disagree about whether Ammann performed these duties "frequently," Ammann has not provided any estimate or quantification

11

of how "infrequently" he performed this work, other than to say that he did it in less than half of the weeks he worked.  By contrast, D'Alonzo's declaration indicates that Ammann either performed (or could reasonably be expected to perform) mechanic work at least every two to three months.  This assertion by D'Alonzo is not inconsistent with Ammann's claim that he performed this work in less than half of his workweeks.  As such, Amman's affidavit does not raise a disputed issue of fact as to the actual frequency of his mechanic tasks—the record shows that Amman performed (or could reasonably be expected to perform) mechanic work at least every two to three months.  The Court now considers whether this undisputed evidence is sufficient to meet Defendants' burden to establish that Ammann is exempt under the Motor Carrier Exemption.

### ii. *Analysis*

Employees who fall under the FLSA's Motor Carrier Exemption, 29 U.S.C. § 213(b)(1), are exempt from overtime under the FLSA.  The Motor Carrier Exemption "applies to any employee for whom the Secretary [of Transportation] has authority to regulate qualifications and maximum hours of service, regardless of whether the Secretary has exercised that authority." *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 271 (S.D.N.Y. 2008) (citing *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 229 (2d Cir. 2002)).  For the Motor Carrier Exemption to apply, the employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles . . . in interstate commerce . . . within the meaning of the

12

Motor Carrier Act." 29 C.F.R. § 782.2(a); *see Levinson v. Spector Motor Serv.*, 330 U.S. 649, 685, (1947).

"There are four broad categories of workers whose duties are said to directly affect the safety of vehicle operation: drivers, mechanics, loaders, and helpers of the first three." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 266 (E.D.N.Y. 2012).  Covered mechanic duties include, inter alia: (1) repairing, adjusting, and maintaining brakes, windshield wipers, lights, wheels, and axles; and (2) and changing tires.  29 C.F.R. § 782.6(a).

If only part of an employee's duties affect the safety of operations of motor vehicles in interstate commerce, courts consider "the character of" those activities "rather than the proportion of either the employee's time or his activities" in determining whether the employee comes within the scope of the Secretary of Transportation's authority to regulate qualifications and maximum hours of service. *Morris v. McComb*, 332 U.S. 422, 427 (1947).

Here, Ammann performed mechanic work alongside other duties.  The record establishes that Ammann's work was sufficient to bring him within the Motor Carrier Exemption as his mechanic duties substantially affected safety and he was assigned these duties throughout his employment.  *Cf. Rodriguez v. R&L Carriers Shared Servs., L.L.C.*, No. 09-23176-CIV, 2010 WL 11506042, at \*3 (S.D. Fla. June 9, 2010) (granting summary judgment on Motor Carrier Exemption where mechanic engaged in covered work in 125 out of 161 weeks even though mechanic—who primarily worked on non-exempt forklifts—spent less than 4% of his time on covered trucks and

13

testified that he only did "small, small jobs on trailers and some trucks"); *Quinn v. Earl Bray, Inc.*, 108 F. Supp. 355, 359–60 (W.D. Okla. 1952) (finding that plaintiff—who performed various duties, including janitorial work—was an exempt mechanic under the Motor Carrier Exemption because, even though "a majority of the time of the plaintiff was spent in work not directly affecting safety of operation" the "test is whether or not he had duties which substantially affected safety of operation").

Additionally, as Defendants point out, interpretative guidance from the Department of Transportation indicates that an employee's performance of duties that directly affect the safety of operation of motor vehicles in interstate commerce at least once every four months is sufficient to the bring the employee under the Motor Carrier Exemption. *See* 46 Fed. Reg. 37,902 (July 23, 1981). This is known as the "four month rule." The Department of Labor also takes the position that—pursuant to this "fourth month rule"—mechanics (and other covered employees) who "performed, or could have been called upon to perform, duties affecting the safe operation of a motor vehicle in interstate commerce in any workweek are exempt from FLSA overtime requirements for the next four months." U.S. Department of Labor

14

("DOL") Field Assistance Bulletin No. 2010–2 ("FAB 2010–2").³ The Court finds the guidance above from both the DOT and the DOL on this "four month rule" are persuasive and concludes that this "four month" standard has been met as Ammann engaged in mechanic work (or could reasonably be expected to engage in such work) at least every two to three months

In disputing the applicability of the Motor Carrier Exemption, Ammann, who does not cite any caselaw, relies on a single sentence from a DOL interpretative bulletin, 29 C.F.R. § 782.2.⁴ As explained below, even assuming that this DOL interpretive bulletin is a persuasive interpretation of the Motor Carrier Exemption, the Court finds that Ammann does not prevail under the DOL's interpretation.

29 C.F.R. § 782.2(b)(3) states:

> As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers, driver's helpers, loaders, or mechanics employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or *from time to time*, safety-affecting activities of the

---

³ The Court notes that this 2010 DOL bulletin, which Defendants cited in their reply brief, discusses a small-vehicle exception to the Motor Carrier Exemption, which was enacted by Congress in 2008. This small vehicle exception requires an employee who would otherwise be covered by the Motor Carrier Exemption to be paid overtime if the employee's "work in whole or in part . . . affect[s] the safety of operation of motor vehicles weighing 10,000 pounds or less." P.L. 110–244 § 306(c). According to the DOL's interpretation of this statute, the small vehicle exception only requires an employee to be paid overtime for the specific weeks in which the employee actually works on small vehicles. *See* FAB 2010–2. As Ammann has not raised the small vehicle exception in any fashion, the Court finds that Ammann has waived any argument that this exception applies to his claims. A finding of waiver is particularly appropriate here because Ammann bears the burden of establishing the applicability of the small vehicle exception. *See Rychorcewicz v. Welltec, Inc.*, 768 F. App'x 252, 256 (5th Cir. 2019); *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579–80 (5th Cir. 2018).

⁴ While this interpretive bulletin issued by the DOL is cited often, courts recognize that this interpretive bulletin is not entitled to any particular weight because, in contrast to other overtime exemptions in the FLSA, Congress has not tasked DOL with issuing interpretative regulations for the Motor Carrier Exemption. *See Troutt v. Stavola Bros.*, 107 F.3d 1104, 1108 n.1 (4th Cir. 1997).

15

character described in paragraph (b)(2) of this section, he comes within the exemption in all workweeks when he is employed at such job. This general rule assumes that the activities involved in the *continuing duties of the job in all such workweeks* will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in transportation in interstate commerce. Where this is the case, the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting "safety of operation." On the other hand, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no change in his duties. *If in particular workweeks other duties are assigned to him which* result, in those workweeks, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, *the exemption will be applicable to him those workweeks, but not in the workweeks when he continues to perform the duties of the non-safety-affecting job.*

29 C.F.R. § 782.2 (emphasis added and citations omitted)

Ammann—who does not assert that the de minimis exception applies here—claims that the final sentence of the DOL interpretative bulletin set above applies because the mechanic work he performed allegedly constitutes "other duties." As such, Ammann claims that the Court must consider the applicability of the exemption on a week-by-week basis. The Court disagrees as Ammann performed (and could be called on to perform) mechanic duties—from "time to time"—throughout his employment. These continuing mechanic duties do not qualify as "other duties assigned to him" under 29 C.F.R. § 782.2(b)(3). Moreover, even assuming arguendo that it is unclear how the somewhat vague provisions of § 782.2(b)(3) apply to the specific facts here, the "four-month rule" discussed above provides further clarity and,

16

under that approach—which is endorsed by both DOT and the DOL—Ammann is exempt.

For the reasons set forth above, the Court finds that Amman is exempt from overtime under the FLSA pursuant to the Motor Carrier Exemption.[5]

### C. <u>Wage Notices and Statement Required by the NYLL</u>

Plaintiffs allege that Defendants failed to provide them with accurate wage notices and wage statements that are mandated by the NYLL.

Under the NYLL, at the time of hiring, employers must provide employees with a notice setting forth the employee's "rate[ ] of pay." N.Y. Lab. Law § 195(1). For nonexempt employees, the notice also must state the "overtime rate of pay." *Id.* Any employee who is not provided such a notice within ten business days following their first day of employment, "may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." *Id.* § 198(1–b).

The NYLL also requires employers to "furnish each employee with a statement with every payment of wages" that sets discloses, among other information, "regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3). *Id.* Any employee not provided such a wage statement is entitled to "recover in a civil

---

[5] Although Ammann is exempt from overtime under the FLSA pursuant to the Motor Carrier Exemption, Ammann cannot be dismissed from this action because, as explained earlier, the Court has not dismissed Plaintiffs' claims for unpaid gap time/straight time under the NYLL and the parties have not addressed the applicability of such claims to an exempt employee such as Ammann.

17

action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." *Id.* § 198(1–d).

While Plaintiffs' summary judgment papers do not dispute that Defendants provided them with wage notices and wage statements, Plaintiffs insist that the notices and wage statements they received were not accurate because they were not paid for all the hours they worked. Plaintiffs maintains that Defendants' failure to account for all hours Plaintiffs worked resulted in: (1) Defendants listing the incorrect number of regular and overtime hours on their wage statements; and (2) Defendants including incorrect hourly rates on both their wage statements and wage notices.

The Court agrees with Plaintiffs that a failure to include all hours worked on their wage statements would render those inaccurate and would, thus, violate NYLL § 195(3). The plain language of § 195(3) requires disclosure of "the number of regular hours *worked*, and the number of overtime hours *worked*," NYLL § 195(3) (emphasis added). *See Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (finding that failure to list the correct number of hours that employee actually worked would establish liability for a wage statement violation). As there are factual disputes about the number of hours the Plaintiffs actually worked, summary judgment is denied on Plaintiffs' wage statement claims.

The Court, however, disagrees with Plaintiffs' argument that their wage statements and wage notices included inaccurate hourly rates. Plaintiffs do not

18

dispute that they were paid the hourly rates and overtime rates listed on their wage notices for all hours that were listed on their timesheets. Rather, Plaintiffs contend that the effective hourly rates of pay that they actually ended up receiving were lower than hourly rates listed on their wage notices because Plaintiff were not paid for all hours worked. Plaintiffs cite no case law in support of this argument, which the Court rejects. The wage notices correctly listed Plaintiffs' regular hourly "rate" and overtime pay "rate." Even if Defendants failed to pay Plaintiffs for all hours worked that did not make the hourly "rates" of pay listed in the notices inaccurate. Accordingly, Defendants are granted summary judgment on Plaintiffs' claims wage notice claims under § 195(1).

### D. **Prevailing Wage Claims**

Defendants seek summary judgment on Plaintiffs' purported prevailing wage claims. Plaintiffs, however, insist that they are not pursuing any prevailing wage claims here. As such, Defendants' motion for summary judgment on any such claims is denied moot.

### III. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is:

1. **DENIED** with respect to Plaintiffs' overtime and unpaid wages claims under the FLSA and NYLL except that it is **GRANTED** as to: (i) gap time claims under the FLSA; (ii) "riding time" claims at the end of the day; and (iii) Ammann's overtime claims because he is exempt under the FLSA;

2. **GRANTED** with respect to Plaintiffs' NYLL § 195(1) claim and **DENIED** with respect to Plaintiffs' § 195(3) claim; and

19

    3. **DENIED** as moot with respect to any prevailing wage claims.

Dated:    Central Islip, New York    **SO ORDERED**
           December 7, 2022

                                                <u>s/ Joan M. Azrack</u>
                                                JOAN M. AZRACK
                                                United States District Judge